In re the Marriage of Karla E. LEWIS, Petitioner–Respondent–Cross–Appellant,

v.

Brian W. LEWIS, Respondent–Appellant–Cross–Respondent.

Nos. 68266, 68308.

Missouri Court of Appeals, Eastern District, Division Five.

Oct. 1, 1996.

Lawrence G. Gillespie, Hilton, Gillespie & Kiesewetter, L.L.C., Webster Groves, for appellant.

Charles P. Todt, Christian A. Stiegemeyer, St. Louis, for respondent.

CRANDALL, Judge.

Husband, Brian W. Lewis, appeals from the decree of dissolution of his marriage to wife, Karla E. Lewis.[1] We vacate the judgment and remand with directions to dismiss the petition for lack of subject matter jurisdiction.

Although husband raises several points in his appeal, the threshold issue is contained in his first point which challenges the subject matter jurisdiction of the trial court. Because of our focus on the jurisdiction of the court, we forego a detailed recitation of the facts and set forth only those facts relevant to the jurisdictional issue.

Husband and wife were married in April 1979 and separated in February 1993. Three children were born of the marriage: a daughter in 1985, a son in 1988, and another daughter in 1991. After the marriage the parties resided in St. Louis, Missouri. In April 1986, in conjunction with husband starting a new job, the parties moved to Colorado. They remained in Colorado until December 1987, when they returned to St. Louis, Missouri. They moved back to Colorado in February 1988 and then back to St. Louis, Missouri, again in May 1989. The parties returned to Colorado in August 1992.

Upon their return to Colorado in 1992, husband and wife bought a new house, paying $372,500.00 for the house and $12,500.00 for landscaping. They enrolled the oldest child in school and the two older children in various sports and activities. Wife secured a Colorado driver's license, registered to vote in Colorado, voted in Colorado, and became a member of the Junior League. The parties also joined a tennis club. Wife left Colorado with the children on February 26, 1993 and returned to St. Louis, Missouri.

She brought the present dissolution action against husband in Missouri on March 15, 1993. In the petition, she alleged that she intended to retain her Missouri residency despite the family's move to Colorado. On March 19, 1993, husband filed a dissolution action in Colorado, which was subsequently dismissed because of the pending action in Missouri. Wife filed a motion for determination of jurisdiction. Husband filed a motion to dismiss wife's petition for lack of jurisdiction and a motion for determination of the most appropriate forum. In March 1994, the

---

1. Wife filed a notice of appeal and characterized herself as the cross-appellant. She did not, however, raise any claims of error distinct from husband's; but merely responded to the points he raised on appeal. Wife's appeal is therefore deemed abandoned and we dismiss her appeal.

court denied husband's motion to dismiss and determined that Missouri was the proper legal forum for adjudicating the dissolution action. Initially, the court found that the interests of the children would best be served by having Missouri be the forum. In April 1994, the court amended its ruling, finding that wife "satisfied the residency requirement as set out in Section 452.310, RSMo." In May 1994, husband sought a writ of prohibition on the ground that the trial court had no jurisdiction to proceed. This court denied the application for the writ. In March 1995, the trial court entered its decree of dissolution.

■ Husband contends the trial court erred in failing to dismiss wife's petition for lack of subject matter jurisdiction because she was not a resident of Missouri for more than 90 days preceding the filing of the dissolution action. Section 452.305.1, RSMo(1994) provides in pertinent part: "The circuit court shall enter a decree of dissolution of marriage if (1) [it] finds that one of the parties has been a resident of this state ... for ninety days next preceding the commencement of the proceeding...."

■ In a dissolution action, the issue of residency in Missouri is a jurisdictional fact which must be pleaded and proved. *Groh v. Groh*, 910 S.W.2d 747, 749 (Mo.App. W.D. 1995). Our standard of review on appeal from a decree of dissolution of marriage is guided by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). When the trial court exercises jurisdiction, an appellate court must accept as true any facts which would support the conferring of jurisdiction. *Groh*, 910 S.W.2d at 749. Here, the trial court specifically found that wife had fulfilled the residency requirements.

■ Generally, the term "residence" as used in § 452.305 is equivalent to "domicile." *Goeman v. Goeman*, 833 S.W.2d 476, 478 (Mo.App.1992). To establish residency, a plaintiff must show actual personal presence in the new place and the intention to remain there, either permanently or for an indefinite time, without any fixed or certain purpose to return to the former place of abode. *Id.* A dissolution of marriage decree is void for lack

of subject matter jurisdiction if it is entered in a state in which neither of the parties to the action are domiciled at the commencement of the action. *Id.*

In *Klindt v. Klindt*, 888 S.W.2d 424, 427 (Mo.App. W.D.1994), the husband was a lifelong resident of Missouri. After being laid off from work, he and his family moved from Missouri to Minnesota for three months while he had a job there. *Id.* He and his family then lived with relatives in Missouri for two weeks before moving to Georgia for another job. *Id.* They lived in Georgia for six months before the husband filed a petition for dissolution in Missouri. *Id.* At that time, the husband moved back to Missouri. *Id.* The trial court granted the wife's motion to dismiss the petition for lack of subject matter jurisdiction. *Id.* The court of appeals reversed and found that although the husband had taken jobs in other states and resided in Missouri only intermittently during the previous nine months, he never intended to change his domicile from Missouri. *Id.* at 428. The evidence showed he had maintained his vehicle registration and insured his vehicle in Missouri. *Id.* at 427. He paid personal property tax and income tax in Missouri and maintained his driver's license in Missouri. *Id.* While living in Georgia, he had also registered with a local job service organization in Missouri and applied for various jobs in Missouri. *Id.* He also left some of his personal property in Missouri. *Id.* The appellate court found that based on this evidence, despite testimony that he expressed an intention not to return to Missouri while in Georgia, the husband had not relinquished Missouri residency because the evidence showed he did not intend to adopt Georgia as his domicile and evidence failed to show he had adopted any location other than Missouri as his domicile. *Id.*

In contrast to the husband in *Klindt*, the evidence in the present action demonstrated that wife moved from Missouri to Colorado with the intent to remain there. The move was made in conjunction with husband's employment, which was not temporary employment. In addition, the parties bought an expensive home, made improvements to the

home, enrolled the oldest child in school, and signed the children up for various lessons and activities. Wife became involved in the community by joining the Junior League and a tennis club. Wife also obtained a Colorado driver's license, registered to vote in Colorado, and voted in an election there. The evidence established that wife intended to remain in Colorado permanently or for an indefinite period of time. Under the facts and circumstances of this case, wife relinquished her Missouri residency when she moved with husband to Colorado.

■ Wife argues that she consented to the move to Colorado in reliance upon husband's representation that he would curtail his business travel; but that shortly after they returned to Colorado, he resumed traveling. In addition, wife claims that she would not have agreed to relocate to Colorado had she been aware of husband's involvement in an extramarital affair. She posits that her intent to change her residency was negated not only because husband tricked her into moving to Colorado by making a false promise about business travel, but also because she returned to Missouri as soon as she learned of husband's extramarital involvement with a co-worker.

■ The record does not support wife's first contention that husband "hoodwinked" her into moving to Colorado by making false promises regarding the extent of his business travel. There was no indication that her move to Colorado was contingent upon husband's compliance with predetermined criteria regarding the amount of business travel he would do. In addition, husband did not fraudulently induce wife to move with misrepresentations of existing fact about the frequency of his business travel. Husband's statements of his opinions, expectations, and predictions for future business travel did not constitute fraudulent misrepresentations. *See Arnott v. Kruse,* 730 S.W.2d 597, 600 (Mo.App.1987).

■ Wife's second argument that marital fidelity was a condition of residency in Colorado is also without merit. Marital fidelity is an implied condition of any marriage and cannot serve as the basis of residency. Hus-

band's infidelity merely reflected the existence of marital problems and did not defeat wife's intent to reside in Colorado.

■ Furthermore, wife's intent to relinquish her Missouri residency was determined at the time she moved to Colorado and was not nullified by events which later altered her intent to remain there. Wife could not actually reside in one place and by mental gymnastics fix in her mind her intent to live somewhere else. *See Goeman,* 833 S.W.2d at 478 (quoting *Trumbull v. Trumbull,* 393 S.W.2d 82, 91 (Mo.App.1965)). Rather, the totality of the evidence supports the view that at the time she moved to Colorado wife intended to make it her home.

■ Lastly, wife argues that the issue of her residency was previously decided by this court when it denied husband's application for a writ of prohibition and the denial of the application was res judicata on the issue of her residency. A denial of an application for a writ of prohibition does not necessarily reflect any view by the court on the merits, but rather may and very often does constitute only a ruling that the situation does not warrant utilization of the extraordinary writ of prohibition. *Estate of Sympson,* 577 S.W.2d 68, 71 (Mo.App.1978). There is no basis for wife's claim of res judicata.

The trial court lacked subject matter jurisdiction over this action because wife failed to satisfy the residency requirement for a dissolution action. Husband's motion to dismiss wife's petition for lack of subject matter jurisdiction should have been granted. Husband's first point is granted.

The judgment of the trial court is vacated. The cause is remanded to the trial court with instructions to dismiss the petition for lack of subject matter jurisdiction.

AHRENS, C.J., concurs.

CHARLES B. BLACKMAR, Senior Judge, concurs in opinion filed.

CHARLES B. BLACKMAR, Senior Judge, concurring.

I concur, with great reluctance. The court follows controlling authority in holding that the denial by this court of the husband's

petition for a writ of prohibition is simply an exercise of discretion which does not constitute an adjudication, but I am sure that this analysis is puzzling and confusing to those not trained in the law. The court at that time had all the information about the case that it now has, and should have stopped the case at that point. Instead it gave the parties and the trial court a green light, thus inducing the Colorado courts to forbear. The resulting delay of three years is hard on all parties, and especially the children.

I suppose that all I can say at this point is that a writ of prohibition should issue as of course when a patent jurisdictional defect is present, and that this is especially so in a dissolution case in which children are involved.